UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SABA CAPITAL MASTER FUND, LTD.,<br><br>      Plaintiff,<br><br>  v.<br><br>BLACKROCK ESG CAPITAL ALLOCATION TRUST, et al.,<br><br>      Defendants. | No. 1:24-cv-01701-MMG |

## REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

STRADLEY RONON STEVENS
 & YOUNG, LLP
Steven D. Feldman
100 Park Avenue, 20th Floor
New York, New York 10017
Telephone: (212) 404-0659
sfeldman@stradley.com

Keith R. Dutill (*pro hac vice*)
Joseph T. Kelleher (*pro hac vice*)
2005 Market Street, Suite 2600
Philadelphia, Pennsylvania 19103
Telephone: (215) 564-8000
kdutill@stradley.com
jkelleher@stradley.com

*Attorneys for R. Glenn Hubbard, W. Carl Kester, Cynthia L. Egan, Frank J. Fabozzi, Lorenzo A. Flores, Stayce D. Harris, J. Phillip Holloman, and Catherine A. Lynch*

WILLKIE FARR & GALLAGHER LLP
Tariq Mundiya
Sameer Advani
Vanessa C. Richardson
Aaron E. Nathan
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
tmundiya@willkie.com
sadvani@willkie.com
vrichardson@willkie.com
anathan@willkie.com

*Attorneys for BlackRock ESG Capital Allocation Term Trust (incorrectly pled as BlackRock ESG Capital Allocation Trust), Robert Fairbairn, and John M. Perlowski*

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ....................................................................................................................... 1

ARGUMENT ............................................................................................................................... 2

    I.   The Majority Vote Bylaw Does Not Violate The 1940 Act. ............................................ 2

        A.  The Majority Vote Bylaw Does Not Violate Section 16(a). ......................................... 2

        B.  The Majority Vote Bylaw Does Not Violate Section 18(i). ......................................... 4

    II.  Saba's Claims Are Barred by the Statute of Limitations, Laches, and Res Judicata .......... 5

        A.  Saba's Claims Are Barred by the Statute of Limitations. ............................................ 6

        B.  Saba's Claims Are Barred by Res Judicata .................................................................. 8

        C.  Saba's Claims Are Barred by Laches. ........................................................................ 10

CONCLUSION ......................................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**                                                                                                                         **Page(s)**

*Badlands Tr. Co. v. First Fin. Fund, Inc.*,
   65 F. App'x 876 (4th Cir. 2003) ...................................................................................4

*CFTC v. Schor*,
   478 U.S. 833 (1986)........................................................................................................3

*Custer v. S. New England Tel. Co.*,
   No. 3:05cv1444 (SRU), 2008 WL 222558 (D. Conn. Jan. 25, 2008).......................9

*Kahn v. Kohlberg, Kravis, Roberts & Co.*,
   970 F.2d 1030 (2d Cir. 1992)......................................................................................7, 8

*Petromanagement Corp. v. Acme-Thomas Joint Venture*,
   835 F.2d 1329 (10th Cir. 1988) ....................................................................................9

*Phoenix Four, Inc. v. Strategic Res. Corp.*,
   No. 05 CIV. 4837 (HB), 2006 WL 399396 (S.D.N.Y. Feb. 21, 2006).....................6

*Saba Cap. CEF Opportunities 1, Ltd. v. Nuveen Floating Rate Income Fund*,
   2022 WL 493554 (S.D.N.Y. Feb. 17, 2022)................................................................5

*Saba Cap. CEF Opportunities 1, Ltd. v. Nuveen Floating Rate Income Fund*,
   88 F.4th 103 (2d Cir. 2023) .....................................................................................6, 7

*Saba Cap. Master Fund, Ltd. v. BlackRock Mun. Income Fund, Inc.*,
   No. 23-CV-5568 (JSR), 2024 WL 43344 (S.D.N.Y. Jan. 4, 2024) ..........................6

*Saylor v. United States*,
   315 F.3d 664 (6th Cir. 2003) ........................................................................................9

*Williams v. Binance*,
   96 F.4th 129 (2d Cir. 2024) .....................................................................................7, 8

*Zhang v. Holder*,
   617 F.3d 650 (2d Cir. 2010)..........................................................................................3

**Statutory and Regulatory Provisions**

1 U.S.C. § 1................................................................................................................................3

15 U.S.C. § 80a-1(a)(42)..........................................................................................................5

18 U.S.C. § 80a-16(a) ..............................................................................................................2

**Miscellaneous**

2 Fletcher Cyc. Corp. § 344 ...................................................................................................... 4

3 McQuillin Mun. Corp. § 12:165 ............................................................................................ 4

18 Wright & Miller, Fed. Prac. & Proc. § 4403 (3d ed.) ........................................................... 9

*Inv. Co. Inst.*, SEC No-Action Letter,
    1992 WL 400454 (Nov. 6, 1992) ......................................................................................... 3

*John Nuveen & Co.*, SEC No-Action Letter,
    1986 SEC No-Act. LEXIS 2943 (Nov. 18, 1986) ................................................................ 3

Restatement (First) of Judgments § 1 (1942) ........................................................................... 10

Restatement (Second) of Judgments § 24(2) ........................................................................... 10

Restatement (Second) of Judgments § 24 cmt. b ...................................................................... 9

**INTRODUCTION**

Saba's rhetoric cannot change the fact that the plain text of the 1940 Act and the undisputed facts compel dismissal of its claims. All of ECAT's directors *were* "elected to that office by the holders of the outstanding voting securities" at an "annual or a special meeting duly called for that purpose," as required by Section 16(a). Saba cannot point to any statutory language requiring either that directors be elected by "public" shareholders or that a fund hold an annual meeting, and decades of guidance from the SEC says the opposite on both points. Under the plain terms of ECAT's Declaration of Trust, vacancies are not created by the expiration of a director's term, and thus Saba's argument depends on a challenge to the permissibility of holdover directors that it has abandoned. Furthermore, every share of ECAT's stock *is* presently a voting stock and has "equal voting rights with every other outstanding voting stock," as required by Section 18(i).

Lacking any statutory basis, Saba takes the 1940 Act's straightforward requirement that directors be elected and twists it into a novel, ambiguous voting standard that does not appear anywhere in the text. Saba's proposed reading would federalize a broad swath of state corporate law and would have sweeping implications stretching far beyond this case.

Saba's position is all the more galling because, like every other ECAT investor, Saba purchased shares with full knowledge that the Bylaws already contained the challenged Majority Vote Bylaw since the inception of the fund. Then, Saba sat on its hands for nearly two years before challenging ECAT's Majority Vote Bylaw, even as it litigated the exact same claim against substantially similar bylaws at other CEFs, and even as it litigated a concededly related challenge to ECAT's governing instrument in another proceeding. Accordingly, Saba's claims should be dismissed as barred by the statute of limitations, laches, and res judicata.

**ARGUMENT**

I.    <u>**The Majority Vote Bylaw Does Not Violate The 1940 Act.**</u>

Saba makes much of its own self-serving and speculative declarations, but its enthusiasm is misplaced. To be clear, ECAT did not, and does not, concede that the unsubstantiated statements in the Grau Declaration are accurate, and if this case proceeds, ECAT will demonstrate their many flaws. Suffice it to say, for purposes of ECAT's motion to dismiss, even if all of the allegations in the Complaint and the Grau Declaration are taken as true (which they are not), Saba's claims still must be dismissed because they fail to state a claim under the 1940 Act.

    A.    <u>*The Majority Vote Bylaw Does Not Violate Section 16(a).*</u>

Saba's claims are premised on the allegation that the Majority Vote Bylaw violates Section 16(a) because it renders ECAT's directors "unelected." *See, e.g.*, Compl. ¶¶ 2, 7, 40; PI Motion 13–15. But there is no dispute that all of the Trustee Defendants ***were*** elected by ECAT's sole initial shareholder at an appropriate meeting. *Compare* Compl. ¶ 30 *with* MTD at 10.[1] By its plain text, Section 16(a) requires nothing more. *See* 18 U.S.C. § 80a-16(a) ("No person shall serve as a director . . . unless elected to that office by the holders of the outstanding voting securities of such company, at an annual or a special meeting duly called for that purpose."). Indeed, Saba concedes that the 1940 Act does not require any particular voting standard in director elections. Response 10. As explained in ECAT's motion to dismiss, *see* MTD at 14–15 and n.12, Congress knew how to impose a voting standard when it wished to—and it conspicuously did not in Section 16(a).

In response, Saba attempts to rewrite Section 16(a), claiming that "elected" means elected by "public" shareholders. That position is unsupported by any statutory text and is contrary to

---

[1] Saba does not object to consideration of the August 12, 2021 Written Consent on the motion to dismiss, and this Court should take judicial notice of it on consent of the parties. MTD at 10 n.8.

longstanding SEC Staff guidance that the investment company industry has relied upon for decades.² The SEC Staff sanctioned the election of directors by an initial sole shareholder more than 30 years ago, stating unequivocally that Section 16(a) does not require a "public shareholder vote" to elect directors. *Inv. Co. Inst.*, SEC No-Action Letter, 1992 WL 400454, at *1 (Nov. 6, 1992). "[E]liminating the requirement of a public shareholder vote for the original board of directors is consistent with a principal concern of Congress, to prevent changes in control of funds without shareholder approval" because a shareholder vote would still be required if a vacancy "results in less than 2/3 of the original board having been elected *by the initial shareholder*." *Id*. (emphasis added) (adding that later-purchasing public shareholders "voted with their dollars" to accept fund's existing arrangements, including the incumbent board). *Id*.³

Similarly, Section 16(a) does not require that funds hold an annual meeting. Saba cannot point to any statutory text actually stating this, and again, Saba's position conflicts with more than 35 years of guidance from the SEC Staff. *John Nuveen & Co.*, SEC No-Action Letter, 1986 SEC No-Act. LEXIS 2943, at *3–4 (Nov. 18, 1986).⁴ The requirement to hold an annual shareholder meeting comes from the NYSE rules, not the 1940 Act, as Saba acknowledges. Response at 24.

---

² SEC Release Nos. 33-7407; 34-38446; 35-26695; 39-2349; IC-22587; IA-1624, at n.20 (Apr. 27, 1999), https://www.govinfo.gov/content/pkg/FR-1997-04-02/pdf/97-8359.pdf ("The Division of Investment Management generally permits third parties to rely on no-action or interpretive letter").

³ Saba also protests that election by a sole initial shareholder is insufficient because the statute says "holders," plural. Response at 12. But in federal statutes, "words importing the plural include the singular" unless context indicates otherwise, which it does not here. 1 U.S.C. § 1. Besides, interpreting "holders" to require multiple shareholders would have no practical effect: during fund formation, a fund could simply have two legal entities serve as initial shareholders, instead of one.

⁴ Congress has not supplanted the guidance in these No-Action Letters despite amending the 1940 Act at least 17 times since they were issued. The "decades of silence on this subject despite repeated amendments" to the 1940 Act show that "Congress . . . has acquiesced in" these interpretations. *Zhang v. Holder*, 617 F.3d 650, 662 (2d Cir. 2010); *see CFTC v. Schor*, 478 U.S. 833, 846 (1986) ("[W]hen Congress revisits a statute giving rise to a longstanding administrative interpretation without pertinent change, the congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress.").

3

Saba also points to Section 16(a)'s provisions regarding vacancies, but those provisions do not apply because there are no vacancies here. Saba claims, without any support, that "vacancies" are created whenever a director's term expires. Response at 3, 12, 14–15. That is incorrect: the expiration of a director's term does not create a vacancy because "each Trustee elected shall hold office until his or her successor shall have been elected and shall have qualified." ECF No. 11-1 ("Declaration of Trust"), art. II, § 2.2; *see also, e.g.*, 2 Fletcher Cyc. Corp. § 344 ("the general rule is that the failure of a corporate body to elect officers or directors does not end the terms of those previously elected" as directors "hold over after the expiration of their term until their successors are elected"); 3 McQuillin Mun. Corp. § 12:165 ("[F]ailure to appoint or elect a successor at the end of a defined period does not usually cause a vacancy where the officer is to hold until a successor is elected or appointed and qualified."). Saba has not challenged this provision of the Declaration of Trust, nor could it, given how common such holdover provisions are. And Saba also has already abandoned any challenge to the "concept of a 'holdover' director" being inconsistent with the 1940 Act. MTD 17 & n.16 (quoting PI Motion at 14); *see also Badlands Tr. Co. v. First Fin. Fund, Inc.*, 65 F. App'x 876, 880 (4th Cir. 2003) (holding that after a failed election, "the holdover of the incumbent directors does not violate the [1940 Act]"). Taken together, these concessions are fatal to Saba's Section 16(a) claim.

### B.     The Majority Vote Bylaw Does Not Violate Section 18(i).

Saba's assertion that the Majority Vote Bylaw "creates unequal voting rights by disproportionately supercharging the voting power of certain shareholders' shares" makes no sense. Response at 19. No share or shareholder's voting power is affected at all, much less "supercharged," by a majority-vote requirement. Here, every share and shareholder participates in the election under the same rules, and every share enjoys equal weight regardless of the identity of the shareholder or their desired outcome. That is all Section 18(i) requires.

4

Saba's only remaining argument about Section 18(i) merely restates its claim that the status-quo bias inherent in a majority-vote standard deprives shareholders of the right "to vote for the election of directors[.]" Response at 18, 20; *see* 15 U.S.C. 80a-1(a)(42). That is wrong. "What makes a stock 'voting' hinges on the ability of its holder to *presently* vote the stock" in a director election, not on the prospects that the holder will obtain a particular election outcome. *Saba Cap. CEF Opportunities 1, Ltd. v. Nuveen Floating Rate Income Fund*, 2022 WL 493554, at *4 (S.D.N.Y. Feb. 17, 2022), *aff'd*, 88 F.4th 103 (2d Cir. 2023). Different voting standards inherently come with varying degrees of status-quo bias, but that is unrelated to whether each share presently enjoys an equal right to vote. MTD at 21. Saba's concept of outcome-neutrality is simply not reflected in the text of the 1940 Act.

Consider what would happen if Saba prevailed in this litigation: a voting standard favoring the status quo would be replaced with one that favors concentrated minority shareholders. That would violate Saba's own interpretation of Section 18(i) because it would "effectively give[] the votes" of concentrated shareholders "more voting rights and power than" the votes of other shareholders. Compl. ¶ 59. And contrary to Saba's appeal to the purposes of the 1940 Act, moving to a plurality voting standard would undermine those purposes as well, because Saba is itself an "affiliated person," *i.e.*, a concentrated shareholder with a greater than 25% stake. MTD at 6 n.3. It would be absurd to interpret the 1940 Act to require voting standards that favor concentrated affiliated shareholders at the expense of more diffuse nonaffiliated shareholders.

## II. Saba's Claims Are Barred by the Statute of Limitations, Laches, and Res Judicata.

Saba's responses to ECAT's limitations, laches, and res judicata defenses all share a common flaw: the fallacy that Saba could not have brought this action at the time it purchased shares in ECAT on March 28, 2022. Despite Saba's insistence that the events of ECAT's 2023 meeting were "essential" to its ability to bring this action, Response at 34, Saba submitted an expert

5

report in *Eaton Vance* analyzing nearly identical data to that in the Grau Declaration, arguing that a substantially similar majority-vote bylaw would make it "impossible in practice" to replace directors at any fund. Appendix B to the Joint Pretrial Memorandum at 3, 35, *Eaton Vance Sr. Income Tr. v. Saba Cap. Master Fund Ltd.*, No. 2084-cv-1533-BLS2 (Mass. Super. Ct. Jan. 26, 2024). **Saba served that expert report on February 22, 2022—over a month before purchasing shares in ECAT**. It strains credulity that Saba needed to wait until after ECAT's 2023 shareholder meeting to bring these claims when it had sufficient evidence to contend, at least as early as February 2022, that replacing incumbents in funds with a majority vote bylaw was "impossible."

Nor is ECAT "estopped" from arguing that Saba could have brought this action at the time it purchased shares.[5] Response at 22–23. The *ECAT I* court rejected the position that merely being a party to an illegal contract gives rise to Article III standing, but the analysis that court actually adopted (applying *Nuveen*) still would have permitted Saba to bring this action immediately upon purchasing shares in ECAT. *Nuveen* held that the fact that Saba's "shares' voting rights will be encumbered" and thereby "diminished in value" was a "concrete" harm conferring standing. 88 F.4th at 116; *see Saba Cap. Master Fund, Ltd. v. BlackRock Mun. Income Fund, Inc.*, No. 23-CV-5568 (JSR), 2024 WL 43344, at *3 n.7 (S.D.N.Y. Jan. 4, 2024). Applied here, that same logic would have permitted Saba to bring this action when it first purchased shares in ECAT.

### A. <u>Saba's Claims Are Barred by the Statute of Limitations.</u>

Saba concedes that a one-year statute of limitations applies to this action, but contests the date on which its claims accrued. Response at 30–32. "[A]n action for rescission" under Section 47(b), to the extent such a cause of action exists, "accrues when the contract is executed." *Phoenix*

---

[5] None of the circumstances warranting estoppel is present here. Even setting aside that a different fund made this standing argument, the district court *found* standing in *ECAT I* on a theory at least as broad, and ECAT's co-defendants therefore gained no advantage from the district court's dicta.

*Four, Inc. v. Strategic Res. Corp.*, No. 05 CIV. 4837 (HB), 2006 WL 399396, at *5–6 (S.D.N.Y. Feb. 21, 2006) (citing *Kahn v. Kohlberg, Kravis, Roberts & Co.* ("*KKR*"), 970 F.2d 1030, 1042 (2d Cir. 1992)). As is undisputed, that date was March 28, 2022, when Saba first purchased shares in ECAT. ECF No. 10-1, at 22; *see also* Compl. ¶ 57.[6]

Saba has only two responses. First, Saba argues that its action is timely because it seeks to "prevent a 'future harm' from occurring." Response at 31 (citing *Nuveen*, 88 F.4th at 116 n.11). But the cited footnote destroys Saba's position: it says a plaintiff may obtain forward-looking relief *even if* the challenged policy does not yet apply to the plaintiff, provided the plaintiff's alleged injury is sufficiently imminent and concrete. 88 F.4th at 116 n.11 (noting that Saba's ability to assert its claim "does not change merely because Saba has not yet purchased any shares affected by" the control share restriction in that case). In other words, *Nuveen* demonstrates that it was *not* necessary for the challenged bylaw provision to *already apply* to Saba in order for Saba's claim to ripen and accrue; instead, under *Nuveen*'s rights-encumbrance and property-value-diminishment theories, Saba's injury was ripe *at least* from the time it purchased shares in ECAT.

Saba's only remaining argument relies on *Williams v. Binance*, 96 F.4th 129 (2d Cir. 2024), an Exchange Act case where the plaintiffs sought rescission of two purchases made on Binance's online crypto exchange made within a year of filing the complaint. *Id.* at 143. The *Williams* court held that the plaintiff's claims "did not accrue *until they could have filed suit*, which was only after they made their purchases," rather than when they opened their accounts and agreed to the terms of service governing the transactions. *Id.* at 141 (emphasis added). That was because "the two alleged violations of the Exchange Act underlying [the *Williams*] Plaintiffs' rescission claims both

---

[6] As Saba acknowledged in *ECAT I*: "It is a general rule that bylaws in existence at the inception of the relation between the corporation and its shareholders enter into the contract between them[.]" No. 23-cv-5568, ECF No. 23, at 7 n.8 (quoting 8 Fletcher Cyc. Corp. § 4198).

7

require transactions." *Id.* at 144. Accordingly, the plaintiffs' "claims could not have accrued until a transaction occurred." *Id.* at 145. The *Williams* court distinguished *KKR* because *KKR* dealt with a contract that "in and of itself violated the Investment Advisers Act," whereas Binance's terms of use did not independently violate the Exchange Act. *Williams*, 96 F.4th at 144.

This case fits within the *KKR* accrual framework, not *Williams*, not least because Saba itself alleges that the Majority Vote Bylaw *in and of itself*—not its application to any particular election—"violates the ICA." Compl. ¶¶ 58–59. Furthermore, Saba seeks a declaration that the Bylaw is "void" pursuant to 15 U.S.C. § 80a-46(a) and rescission of the Bylaw, remedies directed not at one election, but the entire contractual relationship between ECAT and its shareholders. Compl. p.14; PI Motion 25. Saba is not challenging a particular application of certain rules, as in *Williams*; rather, it is challenging the rules themselves. Moreover, Saba's challenge is based upon facts that were not only known to it but were *extensively developed for litigation purposes* years ago, before ECAT's Bylaws ever applied to Saba. At that time, Saba claimed that majority vote bylaws *always* make it "impossible" to replace directors *without any facts about ECAT*, much less the details of its future shareholder meetings.[7] Thus, even under *Williams*, the core holding of which is that rescission claims accrue when a plaintiff "could have filed suit," 96 F.4th at 141, Saba's claims accrued more than one year ago.

### B.     Saba's Claims Are Barred by Res Judicata.

Saba's sole attempt to avoid res judicata is to argue that this case and *ECAT I* do not involve

---

[7] Saba's attempt to move its accrual date forward for limitations purposes undermines its res judicata arguments, because the Majority Vote Bylaw became applicable to ECAT's 2023 director elections not in the "summer of 2023," Response 32, but on March 22, 2023, when Saba nominated candidates to ECAT's board. Compl. ¶ 41. Thus, even based on Saba's theory, this action was ripe before Saba filed *ECAT I* on June 29, 2023. More broadly, Saba's fuzzy theory of when its claims accrued highlights the unworkable nature of its limitations analysis and the weakness of its claims on the merits.

8

the "same transaction." Response 33–35. Saba first raises the technicality that *ECAT I* challenged a provision of the Declaration of Trust, whereas this case challenges a provision of the Bylaws. Response at 33. Not so. The Declaration of Trust and the Bylaws are one integrated agreement between ECAT and its shareholders which "together constitute the governing instrument of the Trust." Declaration of Trust § 12.7; *see id.* § 6.10. Saba recognized this relationship when attempting to have this case related to *ECAT I*. Related Case Statement at 2 (asserting that this action relates to "another unlawful provision of ECAT's bylaws"). Further, the provisions of the Declaration of Trust governing voting standards expressly refer to and incorporate the Bylaws. *Id.* § 10.4. Saba cannot avoid the Second Restatement's "bright line standard" that all ripe challenges to ECAT's governing instrument had to have been "raised in a single action." *Petromanagement Corp. v. Acme-Thomas Joint Venture*, 835 F.2d 1329, 1336 (10th Cir. 1988); *see* MTD at 25.[8]

Nor does it matter whether "different evidence" may support Saba's claims in this action. Evidentiary overlap is merely one factor in a pragmatic assessment of whether two actions arise from the same transaction or series. *See* Restatement (Second) of Judgments § 24 cmt. b ("no single factor is determinative," and "even when there is not a substantial overlap [in proof], the second action may be precluded"). Indeed, res judicata "ordinarily applies despite the availability of new evidence," 18 Wright & Miller, Fed. Prac. & Proc.§ 4403 (3d ed.), even where "new evidence might change the outcome of the case." *Saylor v. United States*, 315 F.3d 664, 668 (6th

---

[8] Saba disputes this rule, relying exclusively on a partial quotation from a District of Connecticut case that, at best, recognized an exception not applicable here. MTD Resp. 32–33. In context, that case actually held that an ERISA plaintiff need not simultaneously sue to enforce a plan and also sue to have it declared illegal; thus, an ERISA plaintiff need not "bring every conceivable claim related to that plan for fear of claim preclusion, *even if those claims are inconsistent with each other*," *Custer v. S. New England Tel. Co.*, No. 3:05cv1444 (SRU), 2008 WL 222558, at *6 (D. Conn. Jan. 25, 2008) (emphasis added to the portion omitted by Saba). Nothing in that statement changes the Second Circuit's rule that all ripe contract claims must be brought in the same action.

Cir. 2003), *see also* Restatement (First) of Judgments § 1 (1942) (res judicata "is applicable although the party against whom a judgment is rendered is later in a position to produce better evidence"). In any event, Saba has already conceded that the overlap between these two cases is such that they would have formed a "convenient trial unit." Restatement (Second) of Judgments § 24(2); *see* ECF No. 5, at 2 (stating that the *ECAT I* court's "familiarity with . . . the subject matter of the action will promote efficiency").[9]

Ultimately, defining the relevant "transaction or series of connected transactions" under the Second Restatement's pragmatic approach is not complicated. As Saba has represented to this Court in seeking to have this case related to *ECAT I*: "Like [*ECAT I*], this case will determine the rules that will govern the upcoming election for the board of [ECAT]." ECF No. 5, at 2. Saba has litigated one challenge to those rules to final judgment; this second attempt is barred.

### C.  Saba's Claims Are Barred by Laches.

There can be no excuse for waiting years to bring a claim that Saba had fully developed before it even purchased shares, and ECAT should not bear the cost of Saba's delay. That cost is significant: as Saba does not dispute, ECAT now has no prospect of exercising its *as of right* appellate options in an orderly fashion. The point is not that a party may never bring a lawsuit shortly before a drop-dead date, but that in these circumstances—where Saba has known everything it needed to know for years and already brought one related lawsuit—the delaying party should not be permitted to prejudice the other party's right to a full and fair chance to defend itself.

## CONCLUSION

This action should be dismissed with prejudice and without leave to amend.

---

[9] Saba's claim that the Eaton Vance Trust sued it under the 1940 Act (and "not vice versa") relating to a majority vote bylaw at the same time as a control-share bylaw is false; Saba sought rescission of *both* provisions in its counterclaims. Eaton Vance Counterclaims ¶¶ 87–92.

| | |
|---|---|
| Dated: New York, New York<br>May 2, 2024 | Respectfully submitted, |
| /s/ Steven D. Feldman* | /s/ Tariq Mundiya |
| Steven D. Feldman (SF-4032)<br>STRADLEY RONON STEVENS & YOUNG, LLP<br>100 Park Avenue, 20th Floor<br>New York, New York  10017<br>Telephone: (212) 404-0659<br>sfeldman@stradley.com<br><br>Keith R. Dutill (*pro hac vice*)<br>Joseph T. Kelleher (*pro hac vice*)<br>STRADLEY RONON STEVENS & YOUNG, LLP<br>2005 Market Street, Suite 2600<br>Philadelphia, Pennsylvania  19103<br>Telephone: (215) 564-8000<br>kdutill@stradley.com<br>jkelleher@stradley.com | Tariq Mundiya<br>Sameer Advani<br>Vanessa C. Richardson<br>Aaron E. Nathan<br>WILLKIE FARR & GALLAGHER LLP<br>787 Seventh Avenue<br>New York, New York  10019<br>Telephone: (212) 728-8000<br>tmundiya@willkie.com<br>sadvani@willkie.com<br>vrichardson@willkie.com<br>anathan@willkie.com |

*Signature used with permission pursuant to S.D.N.Y. ECF Rule 8.5.