O828SABC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  SABA CAPITAL MASTER FUND, LTD.,

4            Plaintiff,

5       v.                           24 Cv. 1701 (MMG)

6  BLACKROCK ESG CAPITAL ALLOCATION
   TRUST, *et al.*,
7
            Defendant.              Conference
8
   ------------------------------x
9
                                    New York, N.Y.
10                                  August 2, 2024
                                    11:00 a.m.
11
   Before:
12
                    HON. MARGARET M. GARNETT,
13
                                    District Judge
14
                        APPEARANCES
15
   SUSMAN GODFREY LLP
16      Attorneys for Plaintiff
   BY:  MARK P. MUSICO
17
   WILLKIE FARR & GALLAGHER LLP
18      Attorneys for BlackRock Defendants
   BY:  TARIQ MUNDIYA
19
   STRADLEY RONON STEVENS & YOUNG, LLP
20      Attorneys for Independent Trustee Defendants
   BY:  JOSEPH T. KELLEHER
21

22

23

24

25

O828SABC

| | |
|---|---|
| 1 | (In open court; case called) |
| 2 | THE DEPUTY CLERK:  Counsel, please state your |
| 3 | appearances for the record, starting with the plaintiff. |
| 4 | MR. MUSICO:  Good morning, your Honor.  Mark Musico, |
| 5 | from Susman Godfrey, on behalf of the plaintiff. |
| 6 | THE COURT:  Good morning, Mr. Musico. |
| 7 | MR. MUNDIYA:  Good morning.  Tariq Mundiya, Willkie |
| 8 | Farr, for the BlackRock defendants. |
| 9 | THE COURT:  Good morning, Mr. Mundiya. |
| 10 | MR. KELLEHER:  Good morning, your Honor.  Joe |
| 11 | Kelleher, from Stradley Ronon, on behalf of the independent |
| 12 | trustee defendants. |
| 13 | THE COURT:  Good morning, Mr. Kelleher. |
| 14 | Thank you all for being accommodating, and I apologize |
| 15 | for any inconvenience of needing to change the day of the |
| 16 | conference.  It's nice to have you all back. |
| 17 | So, I have read your letters and I have a couple of |
| 18 | questions.  I will tell you my immediate perspective, and then |
| 19 | I am happy to hear from both of you about why I am wrong. |
| 20 | I certainly don't want to do the summary judgment |
| 21 | briefing twice, and I don't think that serves either side.  I |
| 22 | do think that there are some factual issues that might not be |
| 23 | relevant to Saba's claims, but are potentially relevant to the |
| 24 | defendants' defenses. |
| 25 | I will say that the list of items in the defendants' |

O828SABC

1    proposal of the subject areas in which they need discovery is

2    very much overbroad and includes things that are, in my view,

3    plainly irrelevant in light of the decision on the PI.

4          For example, I have already ruled that the claim

5    arose, at the earliest, at the first failed election.  And so,

6    things like Saba's own knowledge of and views about the bylaw

7    at the time it purchased shares in ECAT strike me as entirely

8    irrelevant to the dispute in this case.

9          Similarly, Saba's selection of nominees and their

10   qualifications strikes me as entirely irrelevant.  Because as I

11   understand the last two elections, presumably BlackRock thinks

12   its own directors are highly qualified and appealing board

13   members to the shareholders.  But BlackRock's own directors

14   have also not successfully won a contested election.  And so

15   it's difficult for me to see that candidate quality is really

16   an area of legitimate dispute between the parties, given the

17   facts as I understand them, and that presumably the defendants

18   would agree that their own nominees or board members are highly

19   qualified.  So it doesn't seem to me that candidate quality is

20   at issue given the facts as I understand them.

21         So, my inclination is to allow for some brief period

22   of discovery on a limited set of topics that remain relevant

23   after the Court's PI ruling, and then proceed to summary

24   judgment at that point.

25         So, that's kind of my starting position having read

O828SABC

1    your letters and given what I know about the case at this

2    stage.  And so I will hear from you, Mr. Musico, about why you

3    think I shouldn't be concerned about some limited discovery.

4              MR. MUSICO:  Yes, your Honor.  And I will start where

5    you did, which is we completely understand the Court's

6    inclination not to have multiple rounds of summary judgment

7    briefing.  And I will make the same representation to you that

8    we have made in other cases, where we are in a little bit of an

9    unusual procedural posture here because we have had the PI

10   phase and now we are moving into the merits phase of the case.

11   But in other matters, specifically, the challenges to the

12   control share provisions, we have filed a motion for summary

13   judgment alongside our complaint seeking relief as a matter of

14   law.

15             THE COURT:  I understand that.  But it also seems to

16   me that the control share provision is a little bit different

17   than what is at issue here.  Because with the control share

18   cases, Judge Rakoff's decision and the Second Circuit's

19   decision affirming the prior decision on a very similar

20   provision is that the bylaw on its face is contrary to the '40

21   Act on its face.

22             I think this case is a little bit different because

23   it's not as clear.  I think where we left things the last time

24   we were together is that, in its essence, Saba's claim is like

25   an as-applied argument, not that such rules -- and maybe

O828SABC

1    eventually you would have a view that, in reality, these kinds

2    of bylaws can never successfully comply with the '40 Act.  But

3    it's quite different, it seems to me, than the control share

4    provision challenge, which I think, as Judge Rakoff held and

5    the Circuit agreed, is on its face incompatible with the '40

6    Act.

7         Here, an as-applied challenge is different, right,

8    because -- and part of the reason that we are here, and not

9    having the bylaw already enjoined, is because I, at least, was

10   of the view that it's not clear yet that Saba's arguments about

11   the impossibility of shareholder participation, that there was

12   enough evidence to conclude that at the PI stage.

13        MR. MUSICO:  Understood, your Honor, and I apologize,

14   I took a long windup to get to the pitch.  But the pitch was

15   that the representation we made to Judge Rakoff, when he was

16   somewhat incredulous about us coming in and wanting to seek

17   summary judgment right off the bat alongside a complaint, was

18   that we would have no intention of filing any additional

19   summary judgment motions if you determine that you are unable

20   to grant summary judgment at this point in time.

21        And, then, I think the important change in the framing

22   of this case, since we were last together, is that I don't

23   anticipate that our summary judgment motion would be premised

24   in any way on this concept of whether the standard is

25   realistically attainable or impossible to meet in practice.  As

O828SABC

```
1    I hope we have conveyed in our letter, the premise of this
2    summary judgment motion will be purely based on what I
3    understand to be undisputed facts about the current composition
4    of the ECAT board.  And so, whether or not the standard is
5    potentially in some circumstance attainable, it has proved not
6    to be, or it at least has not resulted in any directors being
7    elected over the course of the past two years, and with the
8    additional resignation, that means we now have 80 percent of
9    the board unelected, as you know, it's in our papers.
10          And so, the premise of the summary judgment motion
11   will not in any way turn on the potential attainability of the
12   standard.  It will be premised on whether the undisputed facts
13   about the current composition of the board are consistent with
14   the Act.
15          THE COURT:  Okay.  But it seems to me that there's
16   quite a number of factual disputes.  So it's not clear to me
17   that Mr. Mundiya and Mr. Kelleher are in a position to agree in
18   a joint 56.1 statement to the facts that even Saba might think
19   are necessary to resolving this case.
20          My other concern is that, even accepting Saba's
21   representation, holding you to it, that Saba would not file a
22   second round of summary judgment, that really wasn't how I
23   envisioned it potentially playing out.  My concern, and what
24   seems to me the more likely scenario, is that Saba files a
25   summary judgment now.  If it's not successful and we move to
```

O828SABC

| | |
|---|---|
| 1 | discovery, it seems to me quite likely that the defendants, |
| 2 | after discovery, would at that point -- presumably, in part |
| 3 | they would oppose your summary judgment now, in addition to the |
| 4 | legal arguments that I expect them to make, with also arguments |
| 5 | that there are too many disputed facts.  Then we have |
| 6 | discovery.  And then even if I hold Saba to its representation |
| 7 | that it won't file a second summary judgment round, my |
| 8 | expectation, given your letters in the course of this |
| 9 | litigation so far, is that it wouldn't be Saba that would be |
| 10 | filing a second round of summary judgment, but rather, after |
| 11 | some discovery, the defendants might say, well, now we think we |
| 12 | are in a position to file. |
| 13 |         So, I am skeptical that -- I don't know.  I am not |
| 14 | prejudging anything, and I am not at all suggesting that I have |
| 15 | a formed view that your summary judgment motion prediscovery |
| 16 | would be denied.  I just think that it's possible.  And if it |
| 17 | is, then it doesn't seem to me that that has really served our |
| 18 | collective interest and the collective interest of the parties. |
| 19 |         MR. MUSICO:  So, if I could respond to that briefly, |
| 20 | your Honor. |
| 21 |         THE COURT:  Of course. |
| 22 |         MR. MUSICO:  My reaction to the concept of defendants |
| 23 | filing a summary judgment motion is that it's entirely |
| 24 | inconsistent with the laundry list of supposedly disputed |
| 25 | factual issues that they say need to be aired.  So if they are |

O828SABC

1    serious that they need all of this discovery and there are

2    going to be all of these factual issues, a number of them -- I

3    am happy to run through their list with you, your Honor.

4        THE COURT:  I have already made clear that there are

5    certain areas that I think are foreclosed by the PI.

6        MR. MUSICO:  But even putting aside whether they are

7    relevant, a number of them clearly go to issues that will be

8    the subject of disputed expert testimony, at which point it's

9    very difficult to conceive of a situation where it would be an

10   appropriate circumstance for summary judgment on the defense

11   side.

12       The other thing I will say, your Honor, is that I

13   think this is exactly why the Rule 56(d) procedure exists.  To

14   the extent you do think we have a plausible basis for seeking

15   judgment as a matter of law now, but you're concerned that

16   there may be these defense side factual issues, respectfully,

17   your Honor, I would say the time for us to fully resolve that

18   is not in the context of a status or a scheduling conference.

19   It should be in the context of, let us file our motion, let us

20   give you our best shot at why this is resolvable as a matter of

21   law, and then defendants, if they see fit, can put in a 56(d)

22   affidavit that will make clear, what are the factual issues,

23   not just the factual issues in dispute, but what are the

24   factual issues where they were unable to develop the facts that

25   they would like to develop without discovery, which is the

O828SABC

1    linchpin of a 56(d) affidavit.

2            Then you will have full, fair briefing on this issue

3    and you can determine whether, in fact, there is any discovery

4    defendants need.  Or, if you do, at least then we will have a

5    much clearer sense of really what discovery is needed and how

6    long it should really take.

7            THE COURT:  I appreciate that.

8            Mr. Mundiya.

9            MR. MUNDIYA:  Good morning.

10           Your Honor, let me also start where your Honor left

11   off.  We don't have any interest in prolonging discovery on

12   irrelevant issues.  But they have alleged that they made

13   intense efforts, have made intense efforts at solicitation.  We

14   are entitled to test that.  They have argued that they had no

15   meaningful opportunity to satisfy this standard.  I think we

16   are entitled to test that.  And many of the arguments that they

17   have raised on no discovery I think were made in the *Eaton*

18   *Vance* case, and motions to compel there by the *Eaton Vance*

19   defendants were granted on most of the issues that are at issue

20   in this case.

21           So, obviously, in the context of a discovery dispute,

22   we will be back before you and we take your Honor's words at

23   heart.  But there are a bunch of factual issues here on exactly

24   what Saba did or didn't do.  The affirmative defenses of

25   unclean hands, this is an equitable case, they want an

O828SABC

1    equitable remedy.  We are entitled to test their entitlement to

2    equitable relief.

3              So I think the notion of them filing a motion now, us

4    responding to it, while there is no discovery, we think it's

5    going to be wasteful.  We think there are clearly factual

6    issues on the face of the complaint, based upon the litigation

7    that they have engaged in in other fund complexes.

8              So we just think it's going to be much more efficient

9    to get on with it, get our initial disclosures out, get the

10   discovery requests out.  If there are discovery disputes, we

11   will be back before your Honor quickly.  We have set out a

12   schedule.  It's consistent with your Honor's local rules.

13   There will be some limited expert discovery.  And then we can

14   all move for summary judgment, if we all look at the record and

15   say, okay, there are some factual issues, they're not genuine,

16   they are factual issues that we can deal with, or factual

17   issues that maybe are not really factual issues.  But let's get

18   the record out.  A record that Mr. Musico relied upon in a

19   motion to dismiss hearing.  He used the record evidence in the

20   *Eaton Vance* case to talk about how impossible it was to get

21   this standard.  And now he is saying we don't need any

22   discovery.  Well, he used discovery in *Eaton Vance* against the

23   motion to dismiss.  It really isn't fair for us to be denied a

24   chance to test that record on a motion for summary judgment in

25   an efficient manner.

O828SABC

 1              THE COURT:  Mr. Kelleher, anything?

 2              MR. KELLEHER:  I have nothing to add.  Thank you.

 3              MR. MUSICO:  Your Honor, if I could respond to a

 4      couple of his points.

 5              Again, I think Mr. Mundiya is talking about a very

 6      different state of the world that we were dealing with at the

 7      preliminary injunction stage.

 8              So, first, on this topic of whether they are entitled

 9      to test the extent to which Saba solicited votes, or whether

10      those efforts were adequate, and so on and so forth, the

11      summary judgment motion that we file, your Honor, we would be

12      comfortable with you assuming that Saba did not solicit a

13      single vote beyond the votes that could be voted by the funds,

14      advised by Saba.  It is just not a relevant question to -- it

15      is not a relevant issue to the question that will be at stake

16      in our summary judgment motion.

17              On the topic of *Eaton Vance*, with respect to the

18      discovery that took place there, as your Honor is familiar, the

19      bulk of the discovery there was going to a state law breach of

20      fiduciary duty claim, which is, of course, always

21      fact-intensive.  And again, Eaton Vance was in the posture of

22      doing this predictive exercise.  Is the standard so impossible

23      in practice to meet that we don't have any reasonable

24      expectation that anyone is basically ever going to get elected

25      ever again?  It's not going to be the premise of this summary

O828SABC

1    judgment motion.  The summary judgment motion now, unlike the

2    posture we were in at the preliminary injunction stage, is the

3    elections have already failed and there is an undisputed

4    composition of the board that we simply want to know, is that

5    consistent with the mandates of the Investment Company Act?

6            And then just lastly, your Honor, on this topic of

7    unclean hands, these are the same arguments that have been

8    rehearsed over and over again.  The primary one is about

9    whether Saba is somehow acting with unclean hands by having

10   beneficial ownership greater than 10 percent in these funds.

11   They are taking the threshold even lower now.  In other cases

12   it's been 5 percent, in other cases it's been 3 percent, based

13   on various provisions of the Act.

14           But, respectfully, your Honor, if there were a time

15   that the Second Circuit were going to express concern about

16   Saba having beneficial ownership greater than 10 percent, it

17   would have been when the court had to adjudicate the ability of

18   Saba to vote those shares over 10 percent.  And in both *Nuveen*

19   and in the more recent ruling against BlackRock on the control

20   share issue, the Second Circuit was unconcerned and

21   specifically said that those sorts of equitable considerations

22   were not required to grant rescission when you have a clear

23   violation of the provisions of the Investment Company Act.

24           THE COURT:  Okay.  I think what we should do is -- I

25   am normally inclined to give the plaintiffs a lot of latitude

O828SABC

 1    since they brought the case.  And if the plaintiff here wants

 2    to invest the time and money in filing a summary judgment

 3    motion, I think we will be better positioned to evaluate the

 4    need for discovery, since that's clearly an intense dispute,

 5    after the motion has been filed.

 6            So I am going to permit Saba to file a summary

 7    judgment motion.  I am not going to require you to respond, Mr.

 8    Mundiya.  Instead -- the first thing I will say is, as you

 9    probably already are aware, my rules require a joint 56.1

10    statement, that each side can add to, the things that it alone

11    thinks are undisputed, but there will be a document that does

12    contain the facts that both parties agree at this stage are

13    undisputed.  I think we will have a lot more clarity about the

14    issues that are in dispute once that motion has been filed, and

15    if Saba is willing to put in the time and expense,

16    understanding that I might at that stage say it seems to me

17    clear that discovery is needed for the defendants to be able to

18    either oppose or file their own summary judgment motion, I am

19    willing to give you the chance to do that, Mr. Musico.

20            And I will just tell you, Mr. Mundiya, I am not going

21    to require a formal affidavit to respond.  Once the motion has

22    been filed, just send me a letter, of no more than five pages,

23    with either -- if after receiving the motion your view is that

24    you would like to just respond and proceed to summary judgment,

25    you can just send me a one-line letter that says that's what

O828SABC

1  the defendants are electing.  But if, instead, your view

2  remains as it is today, that proceeding to a full summary

3  judgment motion practice is inappropriate, that will be your

4  opportunity, knowing exactly what you're responding to, to

5  identify for me the areas that the defendants continue to

6  believe would benefit from discovery or the disputed facts that

7  are necessary to resolving the issues that Saba has put on the

8  table or your own defenses.

9          MR. MUNDIYA:  That's fine, your Honor.  In terms of

10 timing, though, we don't want --

11         THE COURT:  Sure.  Let's deal with that now.

12         Mr. Musico, you're proposing August 30 for your

13 opening brief?

14         MR. MUSICO:  Yes, your Honor.  Although I anticipate

15 we could get it on file even sooner, if that was your

16 preference, but we had requested August 30.

17         THE COURT:  Well, that seems reasonable to me because

18 I do have this process where you are going to have to confer

19 with defendants' counsel in order to have a joint 56.1

20 statement.  So we will say August 30.

21         And then, Mr. Mundiya and Mr. Kelleher, how long do

22 you want to evaluate that and let me know how you would like to

23 proceed?

24         MR. MUNDIYA:  Two weeks, your Honor.

25         THE COURT:  That's fine.

O828SABC

1          Ms. Verneus, what is the date that's two weeks after

2     that?

3          THE DEPUTY CLERK:  September 13.

4          THE COURT:  So by September 13, defendants will file a

5     letter of not more than five pages setting forth their position

6     on whether discovery is warranted or whether they are prepared

7     to respond to the summary judgment motion.

8          If you intend to respond, then you will just send me a

9     much shorter letter, presumably, with hopefully a consent date

10    by which you will file your opposition.

11         MR. MUNDIYA:  That's fine.  I am sure Mr. Musico will

12    be reasonable.

13         THE COURT:  Assuming for now that you're going to at

14    that point again renew your request for discovery, I suspect we

15    might need a conference after I get your letter, so we will set

16    that very promptly after I receive the letter.

17         MR. MUNDIYA:  Yes.  We will be back I think.

18         THE COURT:  Well, I enjoy seeing you all.  So that's

19    fine with me.

20         Truly, I was just discussing with our summer interns,

21    today is their last day, what excellent advocacy has been on

22    display in this case, and so it's a pleasure to have you here,

23    even if maybe it's not such a pleasure for either of you or the

24    parties.

25         So I think we have a plan for our immediate next

O828SABC

```
 1    steps.  Mr. Musico, did you want to add something?
 2              MR. MUSICO:  Your Honor, I am hesitating because I
 3    don't know whether this will be the case, but I am wondering if
 4    we should build in a time for us to potentially respond to
 5    defendants' letter.
 6              THE COURT:  Sure.  If there are things in there that
 7    you think you would like to respond to before we have a
 8    conference, it's usually helpful for me to have some writing.
 9    Do you think one week is sufficient?
10              MR. MUSICO:  I am sure we could, your Honor.  And
11    again, if we end up thinking we don't need it, we will let you
12    know that too.
13              THE COURT:  So I will expect, again, assuming the
14    letter is a renewal of the arguments we have had today, by
15    September 20 you will respond.  And all three of you are busy
16    lawyers.  So it does seem to me that maybe we ought to just put
17    a conference on the calendar.  We can cancel it if we don't
18    need it.
19              How about Tuesday, October 1?
20              MR. MUNDIYA:  Can we do it a bit later in that week?
21    I think I'm out of the country.
22              THE COURT:  I will just caution you, Mr. Mundiya, this
23    doesn't affect me but I don't want to presume for anyone else,
24    that Thursday and Friday of that week are Rosh Hashanah.  Is
25    Wednesday better for you?
```

O828SABC

```
 1              MR. MUNDIYA:  Yes.

 2              THE COURT:  How about 2 p.m. on Wednesday, October 2?

 3              MR. MUNDIYA:  I think that works.

 4              MR. MUSICO:  That should be fine, your Honor.  My

 5   phone, unfortunately, is with the security guards downstairs.

 6              THE COURT:  You're not a member of the bar here?

 7              MR. MUSICO:  I am overdue to renew my bar card.

 8              THE COURT:  So for now we will say Wednesday,

 9   October 2, at 2 p.m.  And if we need to adjust that, we will.

10              And that's fine for you, Mr. Kelleher?

11              MR. KELLEHER:  Yes.  Thank you.

12              THE COURT:  We will just be holding that time.  That

13   way we are not scrambling to schedule something at the last

14   minute.

15              So I think we have a plan.  Mr. Musico, anything else

16   you would like to raise at this point?

17              MR. MUSICO:  No.  Thank you, your Honor.

18              THE COURT:  Mr. Mundiya.

19              MR. MUNDIYA:  No, your Honor.  Thank you.

20              THE COURT:  Mr. Kelleher.

21              MR. KELLEHER:  No, thank you.

22              THE COURT:  Thank you all very much, and I look

23   forward to getting your papers.

24              We are adjourned.

25              (Adjourned)
```