**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SABA CAPITAL MASTER FUND, LTD.,

Plaintiff,

v.

BLACKROCK ESG CAPITAL ALLOCATION TRUST, et al.,

Defendants.

No. 1:24-cv-01701-MMG

**ORAL ARGUMENT REQUESTED**

# REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

STRADLEY RONON STEVENS & YOUNG, LLP
Steven D. Feldman
100 Park Avenue, 20th Floor
New York, NY 10017
Telephone: (212) 404-0659
sfeldman@stradley.com

Joseph T. Kelleher (*pro hac vice*)
2005 Market Street, Suite 2600
Philadelphia, PA 19103
Telephone: (215) 564-8000
jkelleher@stradley.com

*Attorneys for R. Glenn Hubbard, W. Carl Kester, Cynthia L. Egan, Frank J. Fabozzi, Lorenzo A. Flores, Stayce D. Harris, J. Phillip Holloman, and Catherine A. Lynch*

WILLKIE FARR & GALLAGHER LLP
Tariq Mundiya
Sameer Advani
Vanessa C. Richardson
Aaron E. Nathan
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 728-8000
tmundiya@willkie.com
sadvani@willkie.com
vrichardson@willkie.com
anathan@willkie.com

*Attorneys for BlackRock ESG Capital Allocation Term Trust (incorrectly pled as BlackRock ESG Capital Allocation Trust), Robert Fairbairn, and John M. Perlowski*

## TABLE OF CONTENTS


INTRODUCTION ....................................................................................................1

ARGUMENT ..........................................................................................................1

I. Saba's Claims Do Not Seek Recission. ..........................................................1

A. *Oxford University Bank* Controls this Case. ..............................................1

B. Section 47(b)(2) Must Be Interpreted in Light of Traditional Equitable Principles, which Confirm the Remedy Saba Seeks Is Not Rescission. ........................2

C. Neither Section 47(b)(3) Nor the Traditional Grounds for "Partial Rescission" Apply to this Case. ....................................................................4

D. Saba's Cited Authority Is Inapposite and Unpersuasive. ..............................6

II. Saba's Declaratory Judgment Claims Are Duplicative and Beyond the Scope of the Limited Private Right of Action for "Rescission." ................................7

III. Defendants Are Not Estopped from Arguing that Saba Lacks a Private Right of Action to Seek an Injunction Requiring ECAT to Hold a New Election. ..........................9

CONCLUSION ....................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Sandoval*,
532 U.S. 275 (2001)....7

*Ashmore v. CGI Grp., Inc.*,
923 F.3d 260 (2d Cir. 2019)....10

*FHFA v. Nomura Holding Am., Inc.*,
873 F.3d 85 (2d Cir. 2017)....2

*George v. McDonough*,
596 U.S. 740 (2022)....2

*Great Am. Ins. Co. v. Zelik*,
2020 WL 85102 (S.D.N.Y. Jan. 6, 2020)....5

*Korwek v. Hunt*,
827 F.2d 874 (2d Cir. 1987)....6

*Lansuppe Feeder, LLC v. Wells Fargo Bank, N.A.*,
15-cv-07034-LTS (Nov. 4, 2015)....8

*Liu v. SEC*,
591 U.S. 71 (2020)....3

*New York v. Arm or Ally, LLC*,
718 F. Supp. 3d 310 (S.D.N.Y. 2024)....10

*Oxford University Bank v. Lansuppe Feeder, LLC*,
933 F.3d 99 (2d Cir. 2019).... *passim*

*Saba Capital CEF Opportunities 1, Ltd. v. Nuveen Floating Rate Income Fund*,
88 F. 4th 103 (2d Cir. 2023)....6, 7, 8

*Saba Capital Master Fund, Ltd. v. BlackRock ESG Capital Allocation Trust*,
2024 WL 3174971 (2d Cir. June 26, 2024)....6, 8

*Samantar v. Yousuf*,
560 U.S. 305 (2010)....2

*Schlessinger v. Valspar Corp.*,
686 F.3d 81 (2d Cir. 2012)....4

*SEC v. Ahmed*,
72 F.4th 379 (2d Cir. 2023) ....................3

*SEC v. First Jersey Sec., Inc.*,
101 F.3d 1450 (2d Cir. 1996)....................10

*SEC v. Jarkesy*,
603 U.S. 109 (2024)....................2

*SEC v. Sourlis*,
851 F.3d 139 (2d Cir. 2016)....................10

*Taggart v. Lorenzen*,
587 U.S. 554 (2019)....................3

*Touche Ross & Co. v. Redington*,
442 U.S. 560 (1979)....................9

*TAMA v. Lewis*,
444 U.S. 11 (1979)....................9

*Waters v. Churchill*,
511 U.S. 661 (1994)....................6

**Statutes**

15 U.S.C. § 77t(b) ....................10

15 U.S.C. § 78u(d)(1) ....................10

15 U.S.C. § 80a-41(d) ....................10

15 U.S.C. § 80a-46.................... *passim*

28 U.S.C. § 2201 ....................8

**Other Authorities**

Dan B. Dobbs, LAW OF REMEDIES: DAMAGES, EQUITY, RESTITUTION
§ 4.3 (2d ed. 1993) ....................3

Restatement (Second) of Contracts § 184....................7

Restatement (Second) of Contracts, § 286....................3

## INTRODUCTION

Under *Oxford University Bank*, Saba's claims in this case do not seek "rescission" of ECAT's Bylaws—that is, a "terminat[ion] [of] the rights and obligations established" by the Bylaws—but a "selective change of its terms" that *Oxford University Bank* squarely placed outside the limited scope of the remedy available under Section 47(b). There is no support under either the 1940 Act or traditional equitable principles for awarding such relief in the name of "rescission." Similarly, Saba's broad claims for declaratory and injunctive relief are either duplicative or manifestly beyond the narrow private right of action authorized by Second Circuit precedent. Consequently, Saba's Complaint must be dismissed.

## ARGUMENT

### I. Saba's Claims Do Not Seek Recission.

#### A. *Oxford University Bank* Controls this Case.

*Oxford University Bank* holds that an "entitlement to rescind" a contract under Section 47(b) is not an "entitle[ment] to rewrite its terms." *Oxford Univ. Bank v. Lansuppe Feeder, LLC*, 933 F.3d 99, 109–10 (2d Cir. 2019). In other words, the decision that recognized a limited private right of action for rescission under Section 47(b)(2) was careful to expressly exclude re-writing of contracts from that remedy. Saba's attempts to avoid the plain import of that language amount to distinctions that make no difference.

Saba tries to distinguish *Oxford University Bank* on the grounds that there, the claimants did not "identif[y] any provision of the Indenture whose performance would violate the" 1940 Act, whereas Saba asserts that it has done so here. *See* Opp. 12; *see also* 933 F.3d. at 109. But the Second Circuit explained that "[e]ven if" those claimants "*had* an entitlement to rescind the Indenture"—that is, even if they *had* identified a provision of the indenture that violated the 1940 Act—that "would not entitle them to rewrite its terms." 933 F.3d at 109–110 (emphasis added). In

reaching that conclusion, the Second Circuit distinguished between rescission, which it described as a "terminat[ion] [of] the rights and obligations established by the Indenture," and a "restructuring" or "selective change" of its terms. *Id.* at 109. Thus, *Oxford University Bank* shows that rescission, as used in Section 47(b)(2), carries its well-established meaning and cannot be used to rewrite a contract alleged to violate the 1940 Act. *See also FHFA v. Nomura Holding Am., Inc.*, 873 F.3d 85, 135-36 (2d Cir. 2017) ("A Section 12 action" under the 1933 Act "operates much like an 18th century action at equity for rescission, which extinguished a legally valid contract that had to 'be set aside due to fraud, mistake, or for some other reason,'" and "required the seller to refund the buyer the full original purchase price in exchange for the purchased item[.]").

**B. <u>Section 47(b)(2) Must Be Interpreted in Light of Traditional Equitable Principles, which Confirm the Remedy Saba Seeks Is Not Rescission.</u>**

Next, Saba characterizes Defendants' arguments "about the common-law remedies of rescission and reformation as largely non-sequitur," because "Saba invokes the ***statutory***, not common law, right of rescission." Opp. 13 (emphasis in original). But the exact opposite is true because, as is well established, "Congress is understood to legislate against a background of common-law principles, and when a statute covers an issue previously governed by the common law," courts "interpret the statute with the presumption that Congress intended to retain the substance of the common law." *Samantar v. Yousuf*, 560 U.S. 305, 320 n.13 (2010) (cleaned up). Put differently, "[w]hen Congress transplants a common-law term, the old soil comes with it," *SEC v. Jarkesy*, 603 U.S. 109, 125 (2024) (cleaned up), and "*that usage itself suffices* to adopt the cluster of ideas that were attached to each borrowed word in the absence of indication to the contrary," *George v. McDonough*, 596 U.S. 740, 753 (2022) (cleaned up) (emphasis added).

Consistent with that principle, "as the Supreme Court has observed, 'statutory references' to a remedy grounded in equity 'must, absent other indication, be deemed to contain the limitations

upon its availability that equity typically imposes.'" *SEC v. Ahmed*, 72 F.4th 379, 396 (2d Cir. 2023) (quoting *Liu v. SEC*, 591 U.S. 71, 87 (2020)). "[A]s part of the 'old soil' they bring with them," such statutes "incorporate the traditional standards in equity practice" that governed the remedy Congress has named. *Taggart v. Lorenzen*, 587 U.S. 554, 561 (2019). In short, it is well established that a term like "rescission" does not lose its traditional common-law meaning simply because it is used in a statute.

Faced with those principles, Saba argues that the relief it seeks does not sound in reformation. Opp. 13-19. But that evades the real question here, which is whether the "selective" deletion of targeted contract terms while otherwise continuing to enforce the contract—sounds in *rescission*. It does not. *See, e.g.*, Dan B. Dobbs, LAW OF REMEDIES: DAMAGES, EQUITY, RESTITUTION § 4.3(6) (2d ed. 1993). The key issue in this case is not what circumstances authorized reformation or rescission at common law (notably, Saba does not argue that the traditional grounds for rescission exist in this case), but what those different remedies authorize a court to do when they *are* available. The remedy of rescission permits a court to undo a transaction altogether. *Id*. § 4.3(7). But a right of action that authorizes *only rescission*—as Section 47(b)(2) indisputably does—would not justify the rewriting of a contract by deleting terms, as Saba wishes. Rewriting a contract by changing or deleting terms is possible, *if at all*, through the remedy of reformation. *See* Dobbs, § 4.3(7) (reformation "worked to enforce the contract as intended," whereas rescission "is a contrasting remedy. It calls the deal off").

Saba also argues, without any support in caselaw or logic, that the removal of a contractual provision does not "rewrite or in any way restructure the terms of the contract[.]" Opp. 12-13. But deleting a term from a contract plainly "rewrites" the contract just as much as adding or changing a term. *See* Restatement (Second) of Contracts, § 286 ("An alteration may be by addition, deletion

or substitution”). Indeed, the Second Circuit has recognized that excising a contract term sounds in reformation, not rescission. *See, e.g.*, *Schlessinger v. Valspar Corp.*, 686 F.3d 81, 85–86 (2d Cir. 2012) (describing a request to excise a provision from a contract, rather than avoid the entire contract, as an attempt to “reform” the contract).

### C. **Neither Section 47(b)(3) Nor the Traditional Grounds for “Partial Rescission” Apply to this Case.**

Saba’s remaining arguments seek to salvage their claim as one for “partial recission,” whether at common law or under Section 47(b)(3). That fails for the reasons already previewed in Defendant’s motion. First, by its terms, Section 47(b)(3) *limits* the scope of Section 47(b) (“[t]his subsection shall not apply . . . .”); it does not expand the remedies available under that subsection. Put differently, whether under Section 47(b)(3) or at common law, “partial” rescission must still be *rescission*—it must involve the *unwinding* of a transaction, not the rewriting of key terms of an ongoing contractual relationship. Saba does not, and cannot, explain how deleting the Majority Vote Bylaw would meet that requirement. ECAT’s Bylaws have never existed without the Majority Vote Bylaw, and the Majority Vote Bylaw came to govern the contractual relationship between ECAT and Saba through the single, indivisible bargain by which Saba became subject to those Bylaws as a shareholder of ECAT; and as *Oxford University Bank* makes clear, even if Saba could “rescind” that bargain, such “rescission” would not permit Saba to rewrite it.

Regardless, Section 47(b)(3) and the doctrine of partial rescission would apply only to the extent one portion of an exchange “may be severed” from the rest, but the Majority Vote Bylaw is not severable in that or any other sense. Saba does not contest that under “the usual test of the severability of a contract,” namely “the entirety or divisibility of the consideration,” the Majority Vote Bylaw is not severable because Saba did not negotiate for or purchase contract terms from ECAT *a la carte*; it paid one price for one indivisible set of Bylaws. MJP at 17-18. And Saba’s

own case agrees that this is the appropriate test to apply: Opp. 9 (citing *Great Am. Ins. Co. v. Zelik*, 2020 WL 85102, at *4 (S.D.N.Y. Jan. 6, 2020) ("Whether a contract is divisible turns on whether the parties intended 'all of [the contract's] parts ***and the consideration therefore [to] be common each to the other and interdependent' or 'susceptible of division and apportionment***.'") (emphasis added)); *see id.* (under this principle, "an insurance policy is divisible when it insures *different classes of property, each separately valued for distinct amounts*, even if the premium for the aggregate amount is paid in gross") (cleaned up) (emphasis added).[1]

To resist that conclusion, Saba relies on a misreading of the identical severability clauses in the Bylaws and the Declaration of Trust.[2] Saba trumpets the language of subsection (a), Opp. 8, but as Defendants explained in their motion, that subsection applies only when "*the Directors*" determine that a particular provision is unlawful; the subsection that would apply here is *(b)*, which expressly limits the effect of a *court's* determination of unlawfulness to the jurisdiction in which the court's order is effective—everywhere else, the *entire contract* survives. MJP at 18 n.9. Saba justifies its reliance on the severability clause on the theory that severability is governed by the intent of the parties, Opp. 9, but the plain language of the Bylaws demonstrates a contrary intent

---

[1] *Zelik* treats this issue of divisibility as a question of fact, 2020 WL 85102, at *4, but here Saba does not even allege the provisions of ECAT's Bylaws were "separately valued for distinct amounts" and it is undisputed that they were not.

[2] Saba mentions the Declaration of Trust in its opposition to the Motion for Judgment on the Pleadings, even though the Declaration of Trust (and the Holdover Provision) do not appear in Saba's Complaint. That is a surprising addition, because Saba previously resisted Defendants' *res judicata* argument on the grounds that this case concerned only the Bylaws, which Saba said was a different contract from the Declaration of Trust. ECF No. 34, at 40. The sudden appearance of the Declaration of Trust and its Holdover Provision in Saba's opposition to a motion for judgment on the pleadings—pleadings which never mention either one—highlights, once again, how Saba's new summary judgment theory has sought to smuggle challenges into this case that were never alleged in the Complaint, and which would render the Complaint subject to dismissal if they were.

that in *this* situation, the Bylaws would not change; instead, the parties intended to obey the court's order, as they must, but nothing more.

In a footnote, Saba argues that the Majority Vote Bylaw is divisible from the Bylaws because it is not sufficiently essential. Opp. 9 n.1. Saba's Complaint alleges nothing of the sort, and Saba's claim that the rules governing director elections are not an "essential part" of ECAT's governing documents is hard to credit. If there is anything the parties agree on, it is that the Majority Vote Bylaw is a critical part of ECAT's governing documents: to Saba, it is the linchpin of an alleged attempt to entrench directors, Compl. ¶ 1, whereas to ECAT, the Majority Vote Bylaw is an important way to protect the fund's shareholders against concentrated activists seeking to obtain a short-term gain at their expense. *See* ECF No. 28, at 24. Saba has not alleged or argued that ECAT would have executed its governing documents on the same terms but *without* the Majority Vote Bylaw, nor could it.

### D. Saba's Cited Authority Is Inapposite and Unpersuasive.

Saba claims the Second Circuit has "twice affirmed" the relief Saba requests in this case, in *Saba Capital CEF Opportunities 1, Ltd. v. Nuveen Floating Rate Income Fund* ("*Nuveen*"), 88 F.4th 103 (2d Cir. 2023), and in an unpublished summary order in *Saba Capital Master Fund, Ltd. v. BlackRock ESG Capital Allocation Trust* ("*ECAT I*"), 2024 WL 3174971 (2d Cir. June 26, 2024). According to Saba, granting this motion would "effectively be saying that *ECAT I* and *Nuveen* were incorrectly decided." Opp. 9-10. Not so. A legal proposition that was not "briefed, argued, or decided," in a previous case—even one that the prior panel "assumed *sub silentio*"—"is not binding precedent." *Korwek v. Hunt*, 827 F.2d 874, 877 (2d Cir. 1987) (internal quotation omitted). Accordingly, *Nuveen* and *ECAT I* "cannot be read as foreclosing an argument that they never dealt with." *Waters v. Churchill*, 511 U.S. 661, 678 (1994) (plurality opinion of O'Connor, J.). Further, in *Nuveen*, the only precedential decision to which Saba appeals, the rescissionary

remedy was directed at an isolated *amendment* to the Bylaws—an independent moment of contracting that the District Court ordered unwound. 88 F.4th at 110 (explaining that the district court had "ordered rescission of the Amendment"). Here, Saba does not seek to unwind any particular transaction (such as its own purchases of shares) that made the Majority Vote Bylaw applicable to Saba; it seeks to rewrite the Bylaws to its own liking.

Saba also cites an amicus brief submitted by the SEC in *Olmsted* as support for its rewriting-as-rescission remedy. The arguments in this 24-year-old amicus brief are not binding on this Court, and they are outdated and unconvincing. Although the amicus brief was filed shortly after the Supreme Court reshaped private-right-of-action jurisprudence in *Alexander v. Sandoval*, 532 U.S. 275 (2001), the brief does not discuss *Sandoval*, much less reflect the Supreme Court's contemporary approach to analyzing the availability of a private right of action. Instead, the amicus brief focuses primarily on legislative history, not statutory text, and locates a "broad equitable discretion to order the appropriate remedy for violations" in a House committee report rather than the statute itself. 2001 WL 34397948, at *13. That type of analysis should not persuade a federal court today, particularly under the logic of *Oxford University Bank*, which found a private right of action in Section 47(b)(2) solely because of its specific textual reference to "rescission." 933 F.3d at 105–06. In addition, the extended discussion in the amicus brief of Restatement (Second) of Contracts § 184—which concerns when a court may deny enforcement of a contract for illegality (a provision that can be applied defensively, rather than in an affirmative action for rescission)—has no bearing on whether Section 47(b)(2) confers a private right of action to seek such relief.

## II. <u>Saba's Declaratory Judgment Claims Are Duplicative and Beyond the Scope of the Limited Private Right of Action for "Rescission."</u>

Saba concedes that courts dismiss duplicative declaratory judgment claims as a matter of course because they serve no useful purpose. Opp. 17. But Saba does not explain how a declaratory

judgment could serve a useful purpose in this case independent of Saba's claim for rescission, except to keep Saba's claim alive in the event that Saba is *not* entitled to rescission. Saba's declaratory judgment claims are thus either meaningless, because they are co-extensive with Saba's claim for rescission, or flatly improper, because they seek to expand Saba's right to seek relief beyond the limited private right of action recognized by the Second Circuit. MJP at 20.

Saba again tries to rely on *Nuveen* and *ECAT I* for propositions not considered in those cases, noting that those cases affirmed (without analysis) declaratory relief alongside so-called rescission. Opp. 15–16. But Saba does not explain what those declaratory judgments achieved that the simultaneous "rescission" did not. Nor did the Second Circuit. The answer is nothing, and for that very reason, it is unsurprising that no party bothered to challenge a duplicative declaratory judgment. Here, however, Saba has asked this Court to grant declaratory relief (i) even if Saba is *not* entitled to rescission, ECF No. 58, at 29 n.8; and (ii) to enforce Section 47(a), a provision of federal law as to which there is no private right of action, Opp. 16-17. Saba is trying to use the Declaratory Judgment Act to expand its substantive rights—something it cannot do. MJP at 20.

In fact, Saba now admits that it wants to use the Declaratory Judgment Act as a *de facto* private right of action under Section 47(a). Opp. 16-17. That is contrary to Saba's Complaint, which asserts two causes of action: one for "rescission" under Section 47(b) and one for declaratory relief under 28 U.S.C. § 2201. Compl. ¶¶ 55-65. That also is contrary to law: Saba cites no case recognizing a private right of action under Section 47(a), and does not explain how Section 47(a) satisfies the factors set forth in *Belikoff* (or *Oxford University Bank*, for that matter) for identifying a private right of action. After all, in that case, the claimants seeking rescission *also* sought a declaration that the relevant contract provisions were "void" under the 1940 Act, the same move Saba is trying here. Answer and Crossclaim at 20, *Lansuppe Feeder, LLC v. Wells Fargo*

*Bank, N.A.*, 15-cv-07034-LTS (Nov. 4, 2015), ECF No. 99. If there were a broad private right of action to declare contracts "void" under Section 47(a), there would have been no need to analyze whether there was a narrower action for "rescission" under Section 47(b)(2).

The same is true of *TAMA v. Lewis*, 444 U.S. 11 (1979). *TAMA* held that Section 215 of the Investment Advisers Act, by declaring certain contracts "void," authorized a private right of action for rescission of such contracts. 444 U.S. at 24-25. If *TAMA* applied to Section 47(a), there would have been no need for *Oxford University Bank*. Because Section 47(a) does *not* create a private right of action, the Declaratory Judgment Act may not be used to substitute for it. MJP at 20.[3] Relatedly, Saba's reliance on *TAMA* demonstrates that the remedy it seeks here is not "rescission," because *TAMA* recognized that the remedy of "rescission" involved unwinding a transaction, not excising a term but enforcing the revised contract. MJP at 14 n.8.

## III. Defendants Are Not Estopped from Arguing that Saba Lacks a Private Right of Action to Seek an Injunction Requiring ECAT to Hold a New Election.

Saba does not dispute that the injunctive relief it has requested in the Complaint is beyond the scope of whatever limited private right of action for "rescission" may be authorized by Section 47(b)(2). Opp. 17-19. Instead, Saba contends that Defendants are judicially estopped from pointing this out because, when opposing Saba's motion for a preliminary injunction, Defendants argued that "adequate post-election remedies would be available *under Maryland law*." Opp. 18 (quoting ECF No. 25, at 21-22) (emphasis added here). The flaw in that argument is plain: by arguing that Maryland law provided adequate post-election remedies, Defendants did not take the position that

[3] Saba's citation to a footnote in *TAMA* stating that the IAA's jurisdictional provision would authorize federal-court jurisdiction over an action for "declaratory relief" does not move the needle. *TAMA* held that "there exists a limited private remedy under the Investment Advisers Act of 1940 to void an investment advisers contract, but that the Act confers *no other private causes of action, legal or equitable*." 444 U.S. at 24 (emphasis added). But a plaintiff's right to sue "must be found, if at all, in the substantive provisions of the [statute] which they seek to enforce, not in the jurisdictional provision." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 577 (1979).

*the federal 1940 Act* authorizes private injunctive relief ordering new elections, and so Defendants cannot be judicially estopped now from pointing out that it obviously (and concededly) does not. *See Ashmore v. CGI Grp., Inc.*, 923 F.3d 260, 272 (2d Cir. 2019) (judicial estoppel requires a "true inconsistency," and cannot apply if "the statements can be reconciled") (cleaned up); *see, e.g.*, *New York v. Arm or Ally, LLC*, 718 F. Supp. 3d 310, 326 (S.D.N.Y. 2024) (earlier position taken about local law was not "clearly inconsistent" with later position taken about federal law).

Saba has nobody but itself to blame that it is not in a position to seek such relief in this case. It was Saba's decision to cram a classic state-law dispute over internal corporate governance into a novel interpretation of the 1940 Act in an effort to avoid ECAT's forum selection provisions. Defendants have argued all along that this case should have been brought (if at all) under Maryland law. ECF No. 28, at 18–19, 21–22, 23–25. The fact that Saba chose not to pursue a state-law remedy that (if warranted) could have been adequate to address its claimed injuries did not make those injuries "irreparable" at the preliminary injunction stage, and is not a basis to complain now that the 1940 Act, interpreted as Saba concedes it must be, does not authorize this type of relief.

Finally, Saba argues that the Court should disregard the statutory limitations on Saba's right to sue under the 1940 Act and give Saba what it wants as an exercise of the Court's "broad" discretion. Opp. 18–19.[4] But the federal courts do not have freewheeling discretion to award relief in the absence of a statutory right to sue. The Court should decline to do so.

## CONCLUSION

The motion for judgment on the pleadings should be granted.

---

[4] The case Saba cites for this proposition, *SEC v. Sourlis*, 851 F.3d 139 (2d Cir. 2016), and the case on which *Sourlis* relies, *SEC v. First Jersey Securities, Inc.*, 101 F.3d 1450 (2d Cir. 1996), are inapposite. Those cases involve actions for injunctive relief brought *by the SEC*, which is expressly authorized to do so, 15 U.S.C. §§ 77t(b), 78u(d)(1), just as the SEC (and *only* the SEC) is expressly authorized to seek injunctions to remedy violations of the 1940 Act, *id.* § 80a-41(d).

Dated: New York, New York
January 10, 2025

Respectfully submitted,

s/ Steven D. Feldman*
Steven D. Feldman (SF-4032)
STRADLEY RONON STEVENS & YOUNG, LLP
100 Park Avenue, 20th Floor
New York, NY 10017
Telephone: (212) 404-0659
sfeldman@stradley.com

Joseph T. Kelleher (*pro hac vice*)
STRADLEY RONON STEVENS & YOUNG, LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19103
Telephone: (215) 564-8000
jkelleher@stradley.com

s/ Tariq Mundiya
Tariq Mundiya
Sameer Advani
Vanessa C. Richardson
Aaron E. Nathan
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 728-8000
tmundiya@willkie.com
sadvani@willkie.com
vrichardson@willkie.com
anathan@willkie.com

*Signature used with permission pursuant to S.D.N.Y. ECF Rule 8.5.